UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CHRISTOPHER HANSEN | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO. 18-6203 |
| | * | |
| ROGER THORPE | * | SECTION "L" (3) |
| | * | |

<u>ORDER & REASONS</u>

Pending before the Court is Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction, R. Doc. 53. Plaintiff filed an opposition, R. Doc. 59, and Defendant filed a reply, R. Doc. 64. Having considered the applicable law and the parties' arguments, the Court now rules as follows.

I.  BACKGROUND

This case arises from a confrontation that occurred between Plaintiff Christopher Hansen and Defendant Roger Thorpe on June 23, 2017. R. Doc. 1 ¶ 5. Plaintiff contends that on that date, while driving on Interstate 10 in New Orleans, Louisiana, he "maneuvered his vehicle around Defendant's vehicle in slow moving traffic." R. Doc. 1 ¶ 5. Plaintiff alleges that he was instantly verbally accosted by Defendant, who withdrew a firearm and fired at least two shots into Plaintiff's vehicle. R. Doc. 1 ¶ 6. Plaintiff explains that he then followed Defendant to identify the license plate number of the vehicle. R. Doc. 1 ¶ 7. Both vehicles exited the interstate and Defendant pulled over to the side of the road. R. Doc. 1 ¶ 7. Plaintiff allegedly pulled up behind Defendant and called the police as Defendant exited his vehicle and approached Plaintiff with his firearm drawn. R. Doc. 1 ¶ 8. Plaintiff alleges that Defendant threatened his life and demanded the Plaintiff give him his cell phone. R. Doc. 1 ¶ 8. Plaintiff complied, and Defendant walked back to his vehicle

with the cell phone. R. Doc. 1 ¶ 10. Plaintiff alleges that Defendant "verbally threatened to kill Plaintiff if Plaintiff continued to follow Defendant." R. Doc. 1 ¶ 11. Plaintiff reported the incident to the police, and Defendant separately contacted the police and explained what had transpired. R. Doc. 1 ¶ 13. The New Orleans Police Department accordingly arrested Defendant, who was charged by the New Orleans District Attorney with discharging a firearm during a violent crime and armed robbery with a firearm. R. Doc. 1 ¶ 14. Based on the foregoing allegations, Plaintiff filed the instant lawsuit on June 22, 2018, seeking to recover damages for assault with a deadly weapon and/or aggravated assault and intentional infliction of emotional distress.

At the time the complaint was filed, Defendant's case, *State v. Roger Thorpe*, Orleans Criminal District Court, Case No. 538428, was pending. Accordingly, on November 1, 2018, Defendant filed a motion to stay the proceedings pending resolution of the criminal case against him. R. Doc. 10. The motion was granted over Plaintiff's opposition. R. Doc. 15. The parties filed a motion to extend the stay on March 29, 2018, explaining that Defendant's criminal trial was set for April 29, 2019. The order was granted, and the stay was extended to May 17, 2019. R. Doc. 23. The stay was lifted upon the resolution of the criminal proceeding and the case is now pending before the Court.

## II.   PENDING MOTION

Defendant has filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). R. Doc. 53. Defendant argues that because the pleadings do not make it facially apparent that the amount in controversy exceeds $75,000, the Court must consider "summary judgment-type" evidence to determine whether the jurisdictional amount is satisfied. *Id.* at 6. Specifically, Defendant argues Plaintiff's discovery responses reveal that he seeks only $465.76 in compensatory damages, $165.67 in special damages for the repair of his

2

vehicle's window, and $300 for therapy sessions. *Id.* at 6–7. Defendant contends that Plaintiff does not seek lost wages or other compensatory damages, and that "Plaintiff's claim for emotional distress damages, in the absence of any physical injury, is insufficient to support a determination that the amount in controversy meets the jurisdictional threshold," especially in light of comparable awards in cases involving severe depression and Post Traumatic Stress Disorder ("PTSD"). *Id.* at 7. Further, Defendant argues Plaintiff's complaint refers to the Civil Rights Act of 1965, but that this claim does not confer federal question jurisdiction to the Court because Plaintiff has not provided any corresponding facts to support the claim. *Id.* at 9–10.

Plaintiff filed an opposition to Defendant's motion in an untimely manner. R. Docs. 59, 60. In a supplemental explanation for the untimely filing, Plaintiff's counsel indicates that the fifteen-minute delay was due to technical difficulties caused by an internet outage. In light of the minimal delay, the Court is prepared to excuse the untimely filing and consider the merits of the opposition.

In opposition, Plaintiff argues the specific facts regarding his mental state pleaded in the complaint sufficiently permit the Court to conclude that his likely damages exceed $75,000. R. Doc. 59 at 1. Even if the Court concludes that the amount in controversy is not facially apparent and requires consideration of summary judgment-type evidence, Plaintiff avers a review of his medical records and Fifth Circuit caselaw involving awards to plaintiffs suffering from PTSD demonstrate that the amount in controversy is jurisdictionally sufficient. Plaintiff notes that he has been treated for a wide variety of severe symptoms on multiple occasions and recently secured a prescription for Venlafaxine and Trazodone for depression and insomnia. *Id.* at 7. Plaintiff also cites his responses to interrogatories, in which he estimated his total damages at $550,000.00, a sum which includes $50,000 in medical damages, $5,000 for damage to his vehicle, and $500,000

3

for mental trauma. He notes that his medical damages are not nearly as high as he anticipated, and indeed are almost non-existent, because he receives his treatment through the Veterans Administration.

Defendant has filed a reply, arguing that Plaintiff mischaracterizes the underlying incident and proffering his own version of the events. R. Doc. 64. Defendant explains that the road rage incident began when Plaintiff started tailgating Defendant's vehicle, in which Defendant was accompanied by his mother and wife. R. Doc. 64 at 2. Plaintiff allegedly cut Defendant off while shouting at Defendant and making obscene hand gestures, and abruptly slammed on the brakes. Defendant alleges he moved into the middle lane, rolled down the window, and asked Plaintiff what was wrong with him. In response, Plaintiff shouted, flipped Defendant off, and "began trying to ram [Defendant's] car." *Id.* at 2. Defendant alleges he reached for his firearm as Plaintiff attempted to ram his vehicle a third time, and fired warning shots towards the ground and wheel well of Plaintiff's vehicle. *Id.* Defendant explains he fired another shot into the back window of Plaintiff's vehicle when Plaintiff attempted to ram Defendant's vehicle a fourth time. *Id.* at 3. Defendant alleges he fired the warning shots to protect his own safety as well as the safety of his wife and mother. *Id.* Defendant explains he subsequently existed the interstate only to discover that Plaintiff was following him. Defendant parked the vehicle and as he exited, he allegedly observed what he believed to be a weapon in Plaintiff's hand. Defendant alleges he realized it was a cell phone, and not a weapon, upon moving closer to Plaintiff, and that he accordingly "kept his firearm pointed toward the ground." *Id.* Defendant denies ever pointing his firearm at Plaintiff. While Defendant remained near Plaintiff's vehicle, Plaintiff allegedly responded by "swinging his phone at [Defendant's] head and attempting to forcibly take the firearm" from Defendant. *Id.* Fearful that the altercation would cause the gun to accidentally discharge, Defendant demanded

that Plaintiff hand over the phone, which he did. *Id*. Defendant alleges he warned Plaintiff not to follow him and returned to his vehicle. *Id*. at 4.

## III.    LAW & DISCUSSION

### A.  Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a district court's subject matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

"The standard of review applicable to motions to dismiss under Rule 12(b)(1) is similar to that applicable to motions to dismiss under Rule 12(b)(6)" except that the Rule 12(b)(1) standard permits the Court to consider a broader range of materials in considering its subject matter jurisdiction over the cause(s) in the suit. *Williams v. Wynne*, 533 F.3d 360, 364–65 n. 2 (5th Cir. 2008). A district court may dismiss for lack of subject matter jurisdiction on any one of three bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986). The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence. *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009) (citing *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008)).

### B.  Discussion

In this case, the relevant basis for jurisdiction is diversity jurisdiction under 28 U.S.C. § 1332. Diversity jurisdiction exists where there is complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interests and costs. *See* 28 U.S.C. § 1332(a).

5

Complete diversity "requires that all persons on one side of the controversy be citizens of different states than all persons on the other side." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008) (citing *McLaughlin v. Mississippi Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004)).

The parties do not dispute that diversity exists; accordingly, the only question is whether the amount in controversy exceeds $75,000. "The amount in controversy is facially apparent when the allegations of the complaint are sufficient to permit a calculation of likely damages exceeding $75,000." *Mosing v. LaBarge*, No. 6:16-CV-01776, 2017 WL 4273204, at *3 (W.D. La. May 24, 2017), *report and recommendation adopted*, No. CV 16-1776, 2017 WL 4248061 (W.D. La. Sept. 25, 2017). A jurisdictional amount is not facially apparent when it rests on "bare allegations of jurisdictional facts," *Celestine v. Transwood, Inc.*, No. CIV.A. 10-771, 2011 WL 4565756, at *1 (M.D. La. Sept. 28, 2011), *aff'd*, 467 F. App'x 317 (5th Cir. 2012), or when the complaint contains "detailed categorial descriptions of the damages sought" without "a description of the nature and the extent of the injury" alleged sustained. *Nelson v. Nationwide Mut. Ins. Co.*, 192 F. Supp. 2d 617, 619 (E.D. La. 2001); *see also Dunomes v. Trinity Marine Prod., Inc.*, No. CIV.A. 14-1968, 2014 WL 7240158, at *4 (E.D. La. Dec. 19, 2014) ("When . . . the petition is vague regarding the types of injuries incurred and any future problems resulting from the incident, 'the court must conclude that it was not "facially apparent" that the amount of damages would exceed $75,000.'" (quoting *Broadway v. Wal–Mart Stores*, No. 00–1893, 2000 WL 1560167, at *2 (E.D. La. Oct. 18, 2000))).

In this case, Plaintiff's complaint demands damages for lost wages, past and future and/or impairment of power to earn money, physical pain, emotional distress and humiliation, and past and future medical expenses, in addition to punitive damages. R. Doc. 1. In addition to this detailed categorical description of damages sought, Plaintiff's complaint identifies, with specificity, the

nature and extent of the injuries he allegedly sustained. Specifically, he contends that as a result of the altercation with Defendant on Interstate 10, which involved Defendant shooting into his vehicle multiple times and subsequently brandishing a firearm in Plaintiff's face while threatening to kill Plaintiff, he suffered, and will continue to suffer "great embarrassment, humiliation and mental and physical anguish." *Id.* ¶ 20, 28. In addition, Plaintiff alleges the incident caused him to suffer "a breakup of his family and divorce from his former wife" and required an "inpatient psychiatric admission during the 2017-2018 holidays," as he suffered from "suicide ideations." *Id.* ¶ 21, 22. Plaintiff avers he "suffered and continues to suffer post traumatic stress disorder and is actively treating for same." *Id.* ¶ 23. Although the Court recognizes that Defendant has painted a remarkable different version the events giving rise to Plaintiff's alleged injury, the Court does not resolve factual discrepancies at this juncture.

Contrary to Defendant's assertion that Plaintiff has only alleged "mere categorical descriptions of damages," Plaintiff has alleged a number of specific injuries for which he seeks to recover and supports those injuries by explaining the facts of the underlying incident, which involved verbal threats to his life and the discharge of a deadly weapon in his proximity. Although physical injuries are not alleged, Plaintiff's mental injuries are clearly defined and apparently ongoing. They are not "bare and conclusory allegations with no explanation." *Dorries v. Harrah's Shreveport/Bossier City Holding Co.*, No. CIV.A. 05-0844, 2006 WL 3095654, at *3 (W.D. La. Oct. 30, 2006). However, the types of damages for which Plaintiff seeks to recover are inherently speculative and difficult to quantify. Because Plaintiff has not alleged severe physical injuries or other types of damages that would allow the Court to better understand the value of Plaintiff's claims, the Court concludes that it is not facially apparent that the amount in controversy exceeds $75,000.

Because it is not facially apparent that the jurisdictional amount is satisfied, Plaintiff must introduce summary judgment-type evidence to establish the jurisdictional amount. In this analysis, the Court may consider evidence obtained through discovery as well as "evidence of comparable cases and verdicts." *Daigle v. Borden Chem., Inc.*, No. CIV.A. 03-2100, 2003 WL 22671726, at *2 (E.D. La. Nov. 7, 2003).

First, Plaintiff's responses to Defendant's interrogatories reveal that he seeks $500,000 in damages related to the "[m]ental trauma from being shot at." R. Doc. 53-2 at 9. Plaintiff also seeks $50,000 in medical expenses and $5,000 to repair damage to his vehicle, although he has subsequently conceded that these amounts are greater than the actual expenses incurred. *Id.* The Court recognizes that typically, a plaintiff's responses to interrogatories are relevant to a motion to remand in which the interrogatory answers rebut the plaintiff's assertion that the amount in controversy is not satisfied. Here, however, Plaintiff's answer remains relevant to the amount in controversy as it reveals that the overwhelming majority of Plaintiff's claim stems from the mental anguish he has allegedly suffered as a result of this incident, not from the cost of medical treatment or the cost to repair his vehicle. *Nelson v. Nationwide Mut. Ins. Co.*, 192 F. Supp. 2d 617, 620 (E.D. La. 2001) (concluding that an interrogatory answer revealing that plaintiff sought $250,000 in general damages was sufficient summary judgment-type evidence to establish the requisite jurisdictional amount).

The fact that Plaintiff's mental trauma eclipses any other damages in this case is supported by Plaintiff's medical records. Plaintiff has attached to his opposition a certified copy of medical records from Katryna High Twilbeck LPC, who diagnosed Plaintiff with PTSD two weeks after the incident. R. Doc. 59-1. Additional medical records from the VA hospital reveal that Plaintiff received treatment for severe anxiety and depression from December 2017 to January 2018. R.

8

Docs. 59-3; 39-4. These VA records include entries from as recently as June 5, 2020, referencing the road range incident and indicating a number of "active problems" such as panic disorder, insomnia, pain disorder with psychological factor, generalized anxiety disorder, and major depressive disorder. R. Doc. 59-4 at 4. The records also reflect that Plaintiff's treatment is ongoing and that he will "require continued care with periodic evaluations." *Id.* at 6. These records, in addition to Plaintiff's allegation that he suffered a "a breakup of his family and divorce," R. Doc. 1 ¶ 21, indicate that Plaintiff's mental condition is severe and ongoing. The fact that he has not incurred significant expenses related to his treatment is irrelevant, as he seeks to recover for the potentially lifelong mental trauma the incident caused, not compensation for the out of pocket cost of treatment.

Additionally, the Court recognizes that "PTSD damages claims can vary widely and larger awards are often tied to bodily injury." *Lewis v. Team Indus. Servs., Inc.*, No. CIV.A. 15-807, 2015 WL 4397144, at *2 (E.D. La. July 13, 2015) (finding that the jurisdictional minimum was met in part because plaintiff "exhibits severe symptoms of PTSD"). Although it is true that courts typically refrain from awarding large sums to compensate victims of emotional distress in the absence of physical injury, allegations of physical injury are not *required* to successfully maintain a claim based on mental anguish or emotional distress. Louisiana courts have allowed mental anguish claims to proceed without correlated physical injury when there exists "the especial likelihood of genuine and serious mental distress, arising from . . . special circumstances, which serves as a guarantee that the claim is not spurious." *Jones v. Unknown Employees of Kerrville Bus Line*, 281 F. App'x 386, 388 (5th Cir. 2008); *see also Gale v. Town of Como*, No. 209CV00169MPMDAS, 2012 WL 12885081, at *5 (N.D. Miss. May 24, 2012), *aff'd sub nom. Gale v. Town of Como, Miss.*, 523 F. App'x 267 (5th Cir. 2013) (recognizing that "[d]amages of

9

this nature are, no doubt, difficult to quantify with any precision," and affirming $50,000 jury verdict for emotional distress based on racial discrimination); *Sierra v. Am. Alternative Ins. Corp.*, 2013-1808 (La. App. 1 Cir. 6/18/14), 147 So. 3d 1125, 1129 (holding that plaintiffs could recover for emotional harm arising from witnessing the destruction of and subsequent displacement from their home, because the resulting distress was "not merely the result of the usual upset, worry, or anxiety attendant to property damage").

The Court concludes this is one of those special situations where a claim for emotional distress can exist absent any physical injuries. Plaintiff was allegedly shot at twice, in broad daylight on a routinely frequented highway. The bullets entered his vehicle, lodging themselves in his headrest. Following the shooting, he was allegedly held at gunpoint by Defendant, who verbally threatened his life. *Cf. Jones*, 281 F. App'x at 387 (finding that emotional distress claims did not meet the amount in controversy in part because there was no suggestion that Plaintiff "feared for his life or safety"). Moreover, Plaintiff has demonstrated that the incident had profound and far-reaching effects on his mental and emotional health, resulting in periodic psychiatric treatment, suicidal ideations, and the destruction of his marriage.

Further, there is at least some support for sizable jury awards in similar cases. For example, in *Dubuy v. Luse*, the Court considered a reasonable award for mental anguish caused by the plaintiff's co-worker, who on three different occasions vandalized plaintiff's vehicle by puncturing the tires with nails and screws. 44,441 (La. App. 2 Cir. 7/15/09), 17 So. 3d 425, 427. Characterizing the defendant's behavior as "criminal, egregious, diabolically mysterious, and (potentially) deadly," the district court awarded $150,000 to the plaintiff whose vehicle was vandalized and $75,000 to her husband and children. *Id.* at 427. On appeal, the court reduced plaintiff's damages to $50,000, concluding that this was the maximum sum a reasonable jury could

10

have awarded despite the evidence that defendant's actions had a "profound and negative effect" on plaintiff. *Id.* at 429. Although Defendant urges the Court to read *Dubuy* as proof that Plaintiff's injuries cannot trigger the jurisdictional amount, the Court disagrees. The immediately life-threatening nature of the underlying incident in the instant case, which allegedly involved verbal threats as well as the discharge of a firearm near Plaintiff's head, and the ongoing nature of his severe emotional injuries, distinguish the case from *Dubuy* and allow the Court to conclude, at least in this preliminary stage, that a reasonable jury could conceivably award Plaintiff more than $75,000. Accordingly, diversity jurisdiction exists and the matter is properly before the Court.

## IV.   CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Defendant's Motion to Dismiss, R. Doc. 53, is **DENIED**.

New Orleans, Louisiana this 6th day of August, 2020.

_____
Eldon E. Fallon
United States District Judge