UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CHRISTOPHER HANSEN | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO. 18-6203 |
| | * | |
| ROGER THORPE | * | SECTION "L" (3) |
| | * | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This case arises from a confrontation that occurred between Plaintiff Christopher Hansen and Defendant Roger Thorpe on June 23, 2017. On that date at about 2:00 P.M. in the afternoon, the Plaintiff and the Defendant got into a road rage incident while traveling Eastbound on I-10 in New Orleans East. In reaction to the road rage incident, Defendant used his personal firearm to shoot at the Plaintiff's vehicle, shattering his rear window and striking the headrest. Plaintiff claims that this incident and its immediate aftermath caused him to sustain physical and emotional pain and suffering requiring continuing medical treatment. Plaintiff filed the instant lawsuit on June 22, 2018 seeking compensatory damages including past present and future physical pain, emotional distress, and humiliation and past present and future medical expenses. R. Doc. 1 at 6. Shortly thereafter, the Court implemented a stay pending the resolution of Defendant's related criminal proceedings. R. Docs. 15, 23. The stay was lifted on January 30, 2020, after the conclusion of the Defendant's criminal proceedings. R. Doc. 25. On March 20, 2020, Defendant filed an answer denying liability and claiming that the Plaintiff was the aggressor in the incident and that he, the

1

Defendant, was in fear of his and his passengers' welfare and that he acted reasonably under the circumstances. R. Doc. 40.

This matter came before the Court, virtually without a jury on September 28, 2020. The Court has carefully considered the testimony of all witnesses, the exhibits entered into evidence during the trial, and the record. Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, the Court hereby enters the following findings of fact and conclusions of law.

To the extent that any findings of fact may be construed as conclusions of law, the Court adopts them as such. To the extent that any conclusions of law constitute findings of fact, the Court adopts them as such.

## I.  FINDINGS OF FACT

1. Plaintiff Christopher Hansen is an adult male resident and citizen of the City of Gulfport, Harrison County, State of Mississippi. R. Doc. 68 ¶ 3.

2. Defendant Roger Thorpe is an adult male resident and citizen of the City of New Orleans. *Id.*

3. At the time of the incident, Plaintiff and Defendant were traveling East on Interstate 10 in New Orleans East. Defendant was driving a 2015 Black Mercedes Sedan. In his car were his wife and his mother. Plaintiff was driving a 2014 General Motors Sierra 4 door pickup truck. It was around 2:15 P.M. It was daylight, and the weather was clear. Traffic was heavy.

4. Defendant was traveling east in the left lane going about 55 miles per hour (MPH). The speed limit on this section is 65 MPH. Plaintiff was also traveling in the left lane going between 65 and 70 MPH. There was one car between the Plaintiff and Defendant. That car pulled into the middle lane and proceeded to pass the Defendant. The Plaintiff closed the gap between his vehicle and the Defendant's vehicle and got

close to Defendant's rear bumper. As the parties continued in this manner, the credible evidence supports the conclusion that the Plaintiff proceeded to speed up and get very close to the rear of Defendant's vehicle, then reduce his speed to let the vehicles separate, only to speed up again and get even closer to the rear of Defendant's car the next time. The vehicles proceeded in this fashion for a brief period of time, after which the Plaintiff swerved into the middle lane and passed Defendant's car.

5. At this point there is an irreconcilable difference in the testimony. The Defendant claims that the Plaintiff was driving wildly, repeatedly veering toward Defendant's car in an attempt to cause Defendant to swerve left and hit the median's retaining wall. The Plaintiff, on the other hand, claims that he simply pulled around Defendant's vehicle to get back in the left lane in front of Defendant's car to continue on his way. There is also a dispute over whether the Plaintiff activated his brakes when he got in front of the Defendant's vehicle to cause more grief to the Defendant.

6. In any event, after Plaintiff moved in front of the Defendant's car, the Defendant got into the middle lane and pulled alongside of the Plaintiff's truck and proceeded to shout obscenities at him complaining about his driving practices. The Defendant "gave him the middle finger" which was promptly returned by the Plaintiff. At this point, the Defendant pulled his car behind the Plaintiff's truck, took out a .357 Magnum pistol (one of the most powerful pistols made), and proceeded to shoot two rounds into Plaintiff's truck, shattering his rear windshield and lodging in the headrest. R. Doc 64-1 at ¶¶ 15, 16; Exhibit 14.

7. The Defendant then got into the middle lane, sped ahead, and exited the Interstate at a nearby exit. The Plaintiff followed the Defendant in an attempt to get his license plate

number to report it to the police. He also called 911 as he followed the Defendant's car. The Defendant pulled his car into a driveway parking area, and the Plaintiff pulled behind him while on the phone with 911. The Defendant got out of his car and walked toward Plaintiff's truck with his gun in his hand. He told Plaintiff to give him his phone, which Plaintiff dropped. The Defendant picked up the phone and told the Plaintiff if he continued to follow him, he would kill him. The Defendant returned to his car and drove off.

8. The Plaintiff then drove to a nearby shop and called 911 again. The New Orleans Police Department took him to the Defendant's apartment where he identified the Defendant as the person who fired the shots. The Defendant was arrested. Eventually, he pleaded guilty to the misdemeanor of aggravated assault.

9. Following the incident, Plaintiff was distraught, anxious, and irritated. Exhibit 1 at 17, 19. He had problems sleeping, eating and focusing on daily activities. *Id*. His personality changed drastically, and he became emotionally withdrawn. Direct Examination of Lynne Hansen, September 28, 2020.

10. Two weeks after the incident, Plaintiff sought treatment with Katryna Twilbeck, LPC, who diagnosed him with Post Traumatic Stress Disorder as a result of the trauma from the shooting perpetrated by the Defendant. Exhibit 1 at 2-3. Plaintiff saw Ms. Twilbeck for five therapy sessions in 2017.[1] Ms. Twilbeck diagnosed Plaintiff with post-traumatic stress disorder from the shooting based on the American Psychiatric Association (APA) criterion from the *Diagnostic and Statistical Manual of Mental Disorders* (DSM–5). *Id.* at 2-3. The medical records relate his mental condition to the

---

1 Mr. Hansen attended therapy sessions with Ms. Twilbeck on July 7, 2017; August 2, 2017; August 9; 2017; August 23, 2017; and September 6, 2017. Exhibit 1 at 2.

incident: Plaintiff had "direct exposure" to a traumatic event in the form of threatened death or serious injury; Plaintiff "persistently re-experiences" the traumatic event through "unwanted, upsetting memories, nightmares, flashbacks, and emotional distress and physical reactivity after exposure to traumatic reminders"; Plaintiff avoids trauma-related stimuli due to "trauma-related thoughts or feelings or trauma-related reminders"; Plaintiff's "overly negative thoughts and assumptions about himself of the world, negative affect, [and] difficulty experiencing positive affect" "began or worsened after the trauma"; Plaintiff's "irritability or aggression, risky or destructive behavior, difficulty concentrating, and difficulty sleeping" "began or worsened after the trauma." *Id*. Further, the medical records indicate that these symptoms persisted, created distress or functional impairment, and were not due to medication, substance use, or other illness. *Id*. at 3. For a period of time, Plaintiff stopped attending these therapy sessions. Several months later, he told a physiatrist that the reason that he quit therapy was because he "felt that he was better", but "meanwhile his marriage was going downhill." *Id*. at 150.

11. At the time of the incident, Plaintiff was married. Exhibit 3. His wife's name is Lynette Joy Hansen ("Ms. Hansen"). *Id*. at 1. Ms. Hansen testified at trial that prior to the road rage incident, the couple had a good marriage and that she trusted the Plaintiff completely. Direct Examination of Lynette Hansen, September 28, 2020. She then explained that the couple's relationship deteriorated very quickly after the incident. *Id*. Ms. Hansen described how the Plaintiff, once easy-going and spontaneous, dramatically changed after the incident, becoming emotionally withdrawn, fearful, and irritated. *Id*. On December 27, 2017, the Plaintiff and his wife separated after a

heated argument. Eventually, the couple divorced on April 4, 2018. Exhibit 3.

12. After experiencing suicidal thoughts, Plaintiff sought emergency medical treatment at the Biloxi Veterans Administration ("VA") Medical Center on December 28, 2017. Exhibit 2 at 198. The nursing mental health intake states that Plaintiff tearfully requested help for "fleeting suicidal thoughts over the Christmas holidays." *Id.* at 197. Plaintiff testified at trial that on Christmas night, he contemplated suicide in his truck with a gun in his glove compartment but did not go through with it out of concern for the harmful effects it would have on his adoptive parents. Direct Examination of Christopher Hansen, September 28, 2020. It is undisputed that Plaintiff and his spouse had separated the night prior, and the Plaintiff was recently laid off from his construction job. Exhibit 2 at 197, 198. Nevertheless, Plaintiff claimed that his marital problems arose from "his PTSD from a 'road rage' incident," which he described in detail to the treating nurse. *Id.* at 198. A few days later on December 31, 2017, Plaintiff went to the VA Medical Center emergency room again for an intense ache in his chest. *Id.* at 190. The treating physician determined that Plaintiff had experienced a panic attack, diagnosed the Plaintiff with anxiety and depression, and prescribed anxiety medication. *Id.* at. 189-191.

13. Plaintiff then received follow-up treatment at the VA clinic in Biloxi, Mississippi. On January 2, 2018, Plaintiff began seeing Marie Smith, LCSW, for therapy sessions and counseling. Plaintiff was prescribed a series of medications for depression, anxiety, and insomnia. R. Docs. 127, 150, 163.[2] Plaintiff was diagnosed with major depressive disorder, generalized anxiety disorder, panic disorder, insomnia, and post-traumatic

---

2. Plaintiff's prescribed medications since the road rage incident include hydroxyzine and clonazepam for anxiety and panic attacks, sertraline and venlafaxine for depression, and trazodone for insomnia. Exhibit 2 at 127, 150.

6

stress disorder. *Id.* at 181, 187. A psychiatric evaluation held on February 21, 2018 stated that Plaintiff experiences "recurring depression" causing crying spells, poor sleep, fatigue, and isolation and "recurring anxiety" since the shooting incident. *Id.* at 150-151.

14. During the defendant's criminal court proceedings, Plaintiff experienced heightened anxiety as a result of confronting his assailant. *Id.* at 99, 102. On May 21, 2018, a psychiatrist noted that Plaintiff's "recurring depression, anxiety, and panic attacks" worse[ned] "due to current life stresses relating to court hearings" involving the June 2017 incident. *Id.* at 133-135.

15. Over a year after the shooting on July 24, 2018, Plaintiff's therapist at the VA reported that Plaintiff continued to "endorse significant PTSD symptomology, with prominent hypervigilance and insomnia", and Plaintiff described crying all the time and feeling angry constantly. *Id*. at 108, 116. On some occasions, Plaintiff pursued additional treatment outside of counseling, and on October 5, 2018, Plaintiff sought walk-in treatment at the suggestion of his employer. *Id.* at 98. Plaintiff described experiencing a chronic state of hyperarousal, intense depression, anger, and irritability, difficulty sleeping and relaxing, and a diminished appetite. *Id.* at. 99.

16. Throughout this period, Plaintiff attended individual psychotherapy sessions with Ms. Smith regularly until her retirement in March 2019. In a session on March 24, 2019, the records describe Plaintiff dealing with "intrusive thoughts and insomnia" and becoming more "isolated" as he "avoided reminders of the road rage incident." *Id.* at 65-66. Plaintiff also became easily startled and often jumped at loud noises during his construction work. *Id.* at 65.

17. As recently as June 5, 2020, the medical records reflect that in light of Plaintiff's mental conditions, Plaintiff will require "continued care with periodic evaluations, management of symptoms with psychotropic medication, and observation of response to medications." *Id*. at 6-8, 46.

## II. CONCLUSIONS OF LAW

18. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a).

19. Venue is appropriate in the Eastern District of Louisiana pursuant to 28 U.S.C. § 1391.

20. A federal court sitting in diversity must apply the substantive law of the state in which it sits. *See Erie v. Tompkins*, 304 U.S. 64, 71–77 (1938). Accordingly, the Court applies Louisiana law to this tort dispute.

21. Recovery for tort damages is based on Louisiana Civil Code Article 2315, which provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. Civ. Code art. 2315. Plaintiff seeks to recover under La. Civ. Code art. 2315 as the victim of aggravated assault with a firearm and intentional and/or negligent infliction of emotional distress. R. Doc. 1 at ¶¶ 17, 25. Under Louisiana law, assault occurs when an intentional threat of battery, or harmful or offensive contact, places one in reasonable apprehension of receiving a physical injury. *Gressett v. Sw. Airlines Co.*, 216 F. Supp. 3d 743, 750 (E.D. La. 2016); *see McVay v. Delchamps, Inc.*, 707 So.2d 90, 93 (La. App. 5 Cir. 1/14/98); *Castiglione v. Galpin*, 325 So.2d 725, 726 (La. App. 4 Cir. 1976); *State* in re *Cortez*, 319 So.2d 496, 497 (La. App. 4 Cir. 1975). In this case, a reasonable person would have feared physical injury, given that shots were fired at the Plaintiff from close range. The Court finds that Roger Thorpe's actions constitute an assault—a tort which violates La. Civ

8

Code art. 2315.

22. To prove intentional infliction of emotional distress, the plaintiff must demonstrate that "(1) the conduct was extreme and outrageous; (2) the emotional distress suffered was severe; and (3) the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result." *Pate v. Pontchartrain Partners, LLC*, No. 13-6366, 2014 WL 5810521, at *3 (E.D. La. Nov. 7, 2014) (quoting *White v. Monsanto Co.,* 585 So.2d 1205, 1209 (La.1991)). Even if Defendant did not know or was not substantially certain that shooting a firearm at Plaintiff would result in extreme emotional distress, his actions were at least negligent. Negligent infliction of emotional distress is not specifically recognized as an independent tort under Louisiana law. *Succession of Harvey v. Dietzen*, 97-2815 (La. App. 4 Cir. 6/24/98), 716 So. 2d 911, 916, *writ denied*, 98-2025 (La. 11/6/98), 728 So. 2d 391. However, it is well established that a plaintiff may recover for unintentional or negligent infliction of emotional distress unaccompanied by physical injury under La. Civ. Code art. 2315. *Covington v. Howard,* 49-135 (La. App. 2 Cir. 8/13/14), 146 So. 3d 933, 937, *writ denied*, 2014-1927 (La. 11/21/14), 160 So. 3d 973; *see Vallery v. S. Baptist Hosp.*, 630 So.2d 861, 866 (La. App. 4th Cir. 1993) (describing Plaintiff's claim for "negligent infliction of emotional distress unaccompanied by any physical injury" as "well established in this state's case law"). To recover, a plaintiff must show that the defendant violated some legal duty to the plaintiff, and the plaintiff must meet the heavy burden of proving outrageous conduct by the defendant. *Simmons v. State*, 2018-0174 (La. App. 4 Cir. 8/29/18), 255 So. 3d 701, 705, *writ denied*, 2018-1613 (La. 12/17/18), 259 So. 3d 345. In the instant case,

9

the Defendant had a duty to act as a reasonable driver under the circumstances, which he clearly breached by shooting his .357 Magnum pistol at the Plaintiff on Interstate 10. In light of the fact that a person of ordinary sensibilities would likely suffer genuine and severe emotional distress from being shot at on the highway, the Court concludes that there is an "ease of association" between the duty breached and the Plaintiff's mental distress. *Covington v. Howard*, 146 So. 3d at 940. Recovery for mental distress without physical injury is limited to cases in which "special circumstances" exist involving the "especial likelihood of real and serious mental distress." *Moresi v. State Through Dep't of Wildlife & Fisheries*, 567 So. 2d 1081, 1096 (La. 1990)*; Crockett v. Cardona,* 97–2346 (La. App. 4 Cir. 5/20/98), 713 So.2d 802. One such instance is when "the plaintiff was actually in great fear for his personal safety." *Moresi*, 567 So. 2d at 1096; *see also*, *Pecoraro v. Kopanica,* 173 So. 203 (Orl. La. App.1937); *Klein v. Medical Building Realty Co., Inc.,* 147 So. 122 (Orl. La. App. 1933); *Laird v. Natchitoches Oil Mill, Inc.,* 10 La. App. 191, 120 So. 692 (2d Cir. 1929); *Cooper v. Christensen,* 212 So.2d 154 (La. App. 4 Cir. 1968). Another established exception is when the mental disturbance results from another tort, such as an assault or battery. Moresi, 567 So. 2d at 1095 (La. 1990) (*citing* PROSSER AND KEETON ON THE LAW OF TORTS § 12 (5th ed. 1984)).

23. The Court finds that Plaintiff has met his burden of demonstrating an "especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious." *Simmons v. State*, 2018-0174 (La. App. 4 Cir. 8/29/18), 255 So. 3d 701, 705, *writ denied,* 2018-1613 (La. 12/17/18), 259 So. 3d 345. Here, the Defendant shot at the Plaintiff twice

on a busy interstate in broad daylight, and one bullet shattered Plaintiff's window and lodged into his headrest. After the shooting, Defendant again threatened Plaintiff with his firearm. Throughout the incident, Plaintiff feared for his life. These facts constitute special circumstances which allow Plaintiff to recover damages for his mental suffering as a result of the assault, in the absence of any physical injury.

24. Defendant does not contest that he fired two rounds at Plaintiff's truck. Instead, Defendant argues that his actions were privileged in self-defense and defense of others pursuant to Louisiana Revised Statutes §§ 14:19, 22. Defendant maintains that he discharged his weapon because he reasonably believed that his life and the lives of his wife and mother were in imminent danger, and that such action was necessary to protect himself and his family from harm. R. Doc. 80 at 6. Defendant asserts that Plaintiff was the true aggressor, and he merely fired "warning shots" from his smaller sedan toward Plaintiff's larger truck in response to Plaintiff's erratic driving maneuvers. La. R.S. § 14:19 provides that "the use of force or violence upon the person of another is justifiable . . . [w]hen committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against property in a person's lawful possession, provided that the force or violence used must be reasonable and apparently necessary to prevent such offense." La. R.S. § 14:22 also provides a similar defense for defense of others, allowing the use of force when a person attacked could have "justifiably used such means himself." In a few instances, Louisiana courts have applied this criminal statute to civil intentional tort cases. *See e.g., Clark v. State, Depart. of Pub. Saf. & Corr.*, 03-0455 (La. App. 5 Cir. 11/12/03), 861 So. 2d 603, 612, *writ denied sub nom.* 2003-3417 (La. 2/20/04); *Hattori v. Peairs*,

11

95-0144 (La. App. 1 Cir. 10/6/95), 662 So. 2d 509, 515, *writ denied*, 95-2677 (La. 1/12/96), 666 So. 2d 322.

25. Although Plaintiff may have been acting irrationally and his driving practices may have taunted the Defendant during the incident in question, Defendant's response cannot be justified. Self-defense requires a "dual inquiry: (1) an objective inquiry into whether the force used was reasonable and (2) a subjective inquiry into whether the force was apparently necessary." *State v. Ross*, 2018-453 (La. App. 3 Cir. 3/13/19), 269 So. 3d 1052, 1072, *writ denied*, 2019-00581 (La. 1/22/20), 291 So. 3d 1041. Defendant's use of force, pulling out a .357, 3-inch barrel Magnum pistol and firing two shots at Plaintiff's truck with his non-dominant hand, was not reasonable under the circumstances. Defendant discharged his weapon at a moving vehicle at 2:00 p.m. on the interstate during heavy traffic. The bullets shattered Plaintiff's window and lodged in the headrest. Given that no physical contact was made between the vehicles and neither vehicle struck another vehicle or thing during the road rage incident, no reasonable person could believe that the threat of great bodily harm or death was imminent, or that the use of a dangerous weapon was necessary. The Defendant's vehicle was behind the Plaintiff's vehicle at the time the shots were fired.[3] The Defendant could have changed lanes or gotten off at the next exit, which he eventually did. Proportionality is the crux of this defense, and Defendant clearly did not meet "force with force." *State v. Ingram*, 45-546 (La. App. 2 Cir. 6/22/11), 71 So. 3d 437,

---

3 For these reasons, the Court is also not persuaded that Defendant's actions fall within the stand-your-ground provision of La. R.S. §14:19(C)-(D). Defendant was not attempting to prevent a "forcible entry" as described in the statute. Additionally, the evidence does not support a finding that Defendant acted to prevent any clear "forcible offense" by the Plaintiff. *C.f. Clark v. State, Depart. of Pub. Saf. & Corr.*, 03-0455 (La. App. 5 Cir. 11/12/03), 861 So. 2d 603, 612, *writ denied sub nom.* 2003-3417 (La. 2/20/04) (finding justified the police shooting of motorcyclist who crouched down and drove directly toward officers at high speed upon approaching roadblock set up to apprehend him).

445, *writ denied*, 2011-1630 (La. 1/11/12), 77 So. 3d 947. Accordingly, the evidence cannot support a finding that Defendant was in fear of his safety or that his use of a firearm was reasonable. Therefore, Defendant cannot avail himself of the defenses of self-defense or defense of others under La. R.S. §§ 14:19, 22.

26. The next question for the Court is whether Plaintiff adequately proved his mental and emotional damages were caused by the Defendant's conduct for the purposes of La. Civ. Code art. 2315. Plaintiff has the burden of proving by a preponderance of the evidence that Defendant's conduct gave rise to Plaintiff's injury. Generally, direct or circumstantial evidence may be used to prove defendant's tortious conduct was the actual cause of a plaintiff's injury. *Lasha v. Olin Corp.*, 625 So. 2d 1002, 1005 (La. 1993). This is particularly true in cases involving "medical matters within common knowledge." *Id.* In these instances, "no [retained] expert testimony is required to permit a conclusion as to causation." *Id*; *Frost v. Carter*, 2013-0375 (La. App. 4 Cir. 4/2/14), 140 So. 3d 59, 67. Considering the Defendant's actions (shooting at the Plaintiff's moving vehicle and approaching the Plaintiff with a gun in hand) the Court does not find that a retained expert is needed to demonstrate a casual relationship between this event and the plaintiff's negative emotional response. First, a lay person could deduce that being shot at on the interstate is a stressful, traumatic event that could lead a victim to experience anxiety, depression, insomnia, and post-traumatic stress disorder. More importantly, the connection between Defendant's conduct and Plaintiff's mental suffering is supported by the certified medical records in Plaintiff's initial diagnosis of PTSD, his treatment for anxiety and depression, and his continual therapy sessions. A variety of health professionals consistently singled out the road

rage incident as the triggering event for Mr. Hansen's post-traumatic stress disorder. Exhibit 2 at 81, 112, 140, 144, 147, 158, and 185. Moreover, it is reasonably foreseeable that such an extreme action taken against a driver would result in that person experiencing emotional distress, as it is squarely within the scope of the risk of an assault. Thus, the evidence supports the conclusion that Defendant's assault was the actual and proximate cause of the Plaintiff's mental suffering.

27. The Court also finds Mr. Hansen's psychological trauma after the incident was a contributing factor to the destruction of his marriage. Exhibit 2 at 164, 174, 176, 198. Both Ms. Hansen's testimony at trial and the medical records support this conclusion. Ms. Hansen testified that the Plaintiff's personality and demeanor drastically changed after the incident. Direct Examination of Lynn Hansen. Plaintiff became emotionally withdrawn and "on edge," and the couple's relationship suffered as a result. *Id.* Plaintiff also identified his "PTSD from a road rage incident" as the source of his marital discord because Plaintiff felt "his wife [was] leaving so she won't have to deal with the emotional pain he is in." *Id.* at 174, 198.

28. The Court recognizes that the Plaintiff has experienced significant difficulties over the course of his life prior to this incident and was particularly vulnerable to an emotional collapse. However, it well-established that a tortfeasor takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct. *Lasha v. Olin Corp.*, 625 So. 2d 1002, 1005 (La. 1993); *Perniciaro v. Brinch*, 384 So.2d 392, 395 (La. 1980); *Sansonni v. Jefferson Parish Sch. Bd.* 344 So.2d 42 (La. App. 4 Cir.1977). If a defendant's conduct aggravates a pre-existing condition, he must compensate the victim for the full extent of the aggravation. *Frost v. Carter*,

2013-0375 (La. App. 4 Cir. 4/2/14), 140 So. 3d 59, 65; *see also Chavers v. Travis*, 2004-0992 (La. App. 4 Cir. 4/20/05), 902 So. 2d 389, 394 (*quoting* 2 STEIN ON PERSONAL INJURY DAMAGES § 11 (3d ed. 2020)) ("[A]n injured person is entitled to recover full compensation for all damages that proximately result from a defendant's tortious act, even if some or all of the injuries might not have occurred but for the plaintiff's preexisting physical condition, disease, or susceptibility to injury.")) It is no defense to Defendant's conduct that Plaintiff may have been in a fragile mental state prior to the road rage incident. Consequently, Plaintiff's childhood traumas and abuse, including that he suffered from depression and anxiety from a young age, do not impact Plaintiff's ability to recover in this case. R. Doc. 80-1 at p. 163:7-13. Prior to the present incident, Plaintiff was able to cope with his frailties and lead a normal and productive life. The evidence supports the conclusion that the road rage incident was the precipitant event which caused his emotional collapse.

29. "One injured through the fault of another is entitled to full indemnification for damages caused thereby." La. Civ. Code art. 2315. *Wainwright v. Fontenot*, 2000-0492 (La. 10/17/00), 774 So.2d 70; *Terry v. Simmons*, 51-200 (La. App. 2 Cir. 2/15/17), 215 So.3d 410. The trier of fact has broad discretion to determine quantum. La. Civ. Code art. 2324.1; *Koertge v. State Farm Fire & Cas. Ins. Co.*, 52-503 (La. App. 2 Cir. 2/27/19), 266 So. 3d 441, 446. In PTSD cases, damage awards vary widely, but larger awards are often tied to cases in which the plaintiff experienced physical injuries or "severe" symptoms of PTSD. *Lewis v. Team Indus. Servs., Inc.*, No. 15-807, 2015 WL 4397144, at **2-3 (E.D. La. July 13, 2015).

30. While Plaintiff has not incurred substantial medical costs because he received

treatment through the Veterans Administration, this may in fact help his case, as it demonstrates Plaintiff's efforts to mitigate damages. A tort victim has an affirmative duty to take reasonable steps to mitigate the damages from an injury. *Campbell v. Robinson*, 2008-1429 (La. App. 4 Cir. 4/8/09), 10 So. 3d 346, 349; *Sepulvado v. Turner*, 37-912, p. 10 (La. App. 2 Cir. 2/10/03), 862 So.2d 457, 463; *Dixie Servs., L.L.C. v. R & B Falcon Drilling USA, Inc.*, 2005-1212 (La. App. 4 Cir. 3/21/07), 955 So. 2d 214, 219, *writ denied*, 2007-0801 (La. 6/1/07), 957 So. 2d 182. It should not be held against the Plaintiff that he sought what treatment was available to him at a low cost. Plaintiff seeks to recover not only compensation for the cost of treatment, but also past, present, and future mental trauma caused by the altercation with Defendant, not simply.

31. The Court finds that this incident has had profound effects on the Plaintiff's mental and emotional health, resulting in periodic psychiatric treatment, suicidal ideations, and the destruction of his marriage. While it is true that "[d]amages of this nature are, no doubt, difficult to quantify with any precision," *Gale v. Town of Como, Miss.*, 523 F. App'x 267 (5th Cir. 2013), a court must consider the facts of circumstances of the case. *Guerrero v. Brookshire Grocery Co.*, 49-707 (La. App. 2 Cir. 4/29/15), 165 So.3d 1092; *Blue v. Donnie Baines Cartemps USA*, 38-279 (La. App. 2 Cir. 3/3/04), 868 So.2d 246. A trier of fact must consider both qualitative factors like the nature and relative severity of the injuries and quantitative factors like the duration of a plaintiff's injury and the duration of the treatment. *Terry v. Simmons*, 51,200 (La. App. 2 Cir. 2/15/17), 215 So. 3d 410, 423–24; *Young v. Marsh*, 49,496 (La. App. 2d Cir. 11/19/14), 153 So.3d 1245. Article 2324.1 of the Louisiana Civil Code provides

that the judge has "much discretion" in the assessment of damages in the case of offense. La. Civ. Code 2324.1; *see also Guillot v. Doe*, 2003-1754 (La. App. 3 Cir. 6/30/04), 879 So. 2d 374, 379 (noting the "great and, even, vast discretion vested in the trial court" in awarding general damages). A general damage award will be upheld so long as it "bears a reasonable relationship to the proved damages," and is "not the result of passion or prejudice." *Youn v. Mar. Overseas Corp.*, 623 So. 2d 1257, 1261 (La. 1993); *see, e.g., Berthelot v. Aetna Cas. & Sur. Co.*, 623 So. 2d 14, 22 (La. Ct. App. 1993) (finding no error in $50,000 general damages award to plaintiff who experienced a mild electrical shock but perceived the event as life threatening), *Guillot v. Doe*, 2003-1754 (La. App. 3 Cir. 6/30/04), 879 So. 2d 374 (finding no error in general damages award of $45,000 to plaintiff who suffered from nightmares and became withdrawn after being shot in the head with a BB gun); *Terry v. Simmons*, 51,200 (La. App. 2 Cir. 2/15/17), 215 So. 3d 410, 425 (finding no error in $45,000 general damages award to plaintiff who experienced emotional trauma from roll-over car accident, despite little physical injury). Ultimately, the facts and circumstances of a particular case dictate the adequacy of quantum, not a "comparison of prior awards in cases with similar medical injuries." *Guillot v. Doe*, 2003-1754 (La. App. 3 Cir. 6/30/04), 879 So. 2d 374, 380.

32. Having considered the facts and circumstances of this case presented at trial, the Court finds that the immediately life-threatening nature of the underlying incident in this case, which involved an aggressive confrontation and the discharge of a firearm near Plaintiff's head, and the ongoing nature of the Plaintiff's severe emotional injuries, warrant the imposition of a significant general damage award. The Court awards

$78,000 in general damages under La. Civ. Code art. 2315 for Plaintiff's past, present, and future emotional distress, humiliation, and mental anguish as a result of the assault with a firearm against Mr. Hansen by Mr. Thorpe.

33. The Court also finds that Roger Thorpe owes $465.76 in special damages for the following items:

    a. Five therapy sessions with Katryna High Twilbeck, LPC for a total cost of $300. R. Doc. 68 at 13.

    b. Safelite AutoGlass replacement of rear passenger side window for a cost of $165.76. R. Doc. 68 at 13.

34. In sum, Defendant is liable for $78,465.76 to Plaintiff for the incident.


New Orleans, Louisiana, this 23nd day of October 2020.

_____
Eldon E. Fallon
U.S. District Court Judge